Roger STANTON and Diane Stanton, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, INC., Defendant.

No. Civ 99–1033.

United States District Court,
D. South Dakota,
Northern Division.

Sept. 28, 2001.

Lee A. Schoenbeck, Schoenbeck Law, Watertown, South Dakota, for plaintiff.

Gary P. Thimsen, Susan M. Sabers, Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, David B.A. Demo, LHB Pacific Law Partners, Berkeley, California, for defendant.

## MEMORANDUM DECISION AND ORDER

KORNMANN, District Judge.

[¶ 1.] Plaintiffs Roger and Diane Stanton ("Stantons") filed this bad faith action [1] against defendant State Farm Fire and Casualty Company ("State Farm"), alleg-

---

1. The case was originally filed in state court and properly removed by State Farm to this court pursuant to 28 U.S.C. § 1446(a). The original action also contained a claim for negligence against Dakota Claims Service, the entity that actually undertook the adjustment in this case. That claim is no longer an issue because of the prior dismissal of that party after the case was removed.

ing a breach of State Farm's duty of good faith and fair dealing. The allegations arise out of the flooding that took place in parts of Northeastern South Dakota in the spring of 1997. Stantons' building was insured by a standard flood insurance policy ("SFIP") that was issued to them by State Farm as part of the National Flood Insurance Program ("Program"), which is administered by the Federal Emergency Management Agency ("FEMA"). Stantons submitted two claims to State Farm, the original claim and a supplemental claim thereto, and received checks totaling $54,010.63. This case, Stantons allege, arises out of State Farm's delay in adjusting and processing Stantons' supplemental claim. In response, State Farm has filed a motion for summary judgment. For the reasons detailed below, State Farm's motion should be granted as there is no genuine issue of material fact and State Farm is entitled to judgment as a matter of law.

### FACTUAL BACKGROUND

[¶ 2.] Stantons owned and operated the Riverside Drive–In located in Watertown, South Dakota. To insure the premises from potential flood loss, Stantons purchased from State Farm an SFIP that provided coverage for the building for the period of February 20, 1997, through February 20, 1998. On April 6, 1997, Stantons' property suffered flood damage. As the date of the flooding indicates, the property was covered by State Farm's policy when the property was damaged.

[¶ 3.] In early May of 1997, State Farm began to adjust Stantons' claim. On May 12, 1997, State Farm's adjuster provided Stantons with an estimate of the flood damages, together with a proof of loss form reflecting the estimated damages. Stantons signed and notarized a proof of loss form on May 13, 1997, and returned it to State Farm. Two weeks later, on May 29, 1997, State Farm paid the Stantons $20,639.12 based on the proof of loss. For purposes of this lawsuit, Stantons have no complaint with State Farm's adjustment of that first claim. As stated above, Stantons received payment for their first claim approximately seven weeks after the flood damage occurred.

[¶ 4.] This lawsuit derives from the supplemental claim that Stantons made to State Farm. After Stantons received the first check, they notified State Farm and representatives of the Program that their property suffered additional flood damage that was inadvertently missed during the adjustment of their claim. It is undisputed that Stantons never filed a supplemental proof of loss form for the requested additional benefits. Despite the absence of a supplemental proof of loss statement, State Farm investigated Stantons' supplemental claim and decided to authorize an additional payment totaling $33,371.51. Stantons received the supplemental payment on January 15, 1999, approximately twenty-one months after their property had been damaged. It is that considerable delay that has spawned this litigation.

[¶ 5.] As mentioned above, Stantons filed this bad faith action alleging that State Farm breached its duty of good faith and fair dealing owed to them. No claim whatsoever is made for any sort of recovery under the insurance policy. It is a bad faith action only for State Farm's alleged tortious delay in processing and adjusting the supplemental claim. As damages, Stantons seek recovery for their claimed pecuniary loss plus interest, punitive damages, and attorney fees.

[¶ 6.] In response to this lawsuit, State Farm filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) arguing that Stantons' state law extra-contractual claims are preempted by the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et. seq. The court, by published opinion, 1999 DSD 37, 78 F.Supp.2d 1029 (D.S.D.1999), ana-

lyzed the preemption issue as presented and argued, failed to find preemption under the one theory presented and argued, and denied the motion to dismiss. In response to that decision, State Farm has filed a number of motions. These include a motion for reconsideration of that issue, a motion for Rule 60(b) relief from that decision, a motion for summary judgment, one ground of which is to revisit the preemption issue, two motions to file additional authority, some authority of which relates to the preemption issue, and a motion to strike Stantons' expert's report which was filed in opposition to State Farm's motion for summary judgment. While the court frowns upon a party seeking reconsideration of an issue that the court has previously decided, State Farm has raised a dispositive issue in its motion for summary judgment that is separate from the preemption issue. It is on this issue that the court believes summary judgment is warranted. Thus, the rest of the pending motions should all be denied as moot.[2]

### *LEGAL ANALYSIS*

[¶ 7.] The summary judgment standard is well known and has been set forth by this court in numerous opinions. *See Hanson v. North Star Mutual Insurance Co.,* 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009–1010 (D.S.D.1999), *Gardner v. Trip County,* 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D.1998), *Patterson Farm, Inc. v. City of Britton,* 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088–89 (D.S.D.1998), and *Smith v. Horton Industries,* 1998 DSD 26

¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D.1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v.. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995).

[¶ 8.] In its motion for summary judgment, State Farm argues that it is entitled to judgment as a matter of law because Stantons did not comply with the terms of the policy when they failed to sign and submit a notarized proof of loss form for their supplemental claim. This, State Farm contends, is fatal to this action. In response, Stantons make several arguments. The primary thrust of Stantons' response is that they do not seek damages under the policy; they only seek damages for State Farm's alleged tortious conduct in its handling of their supplemental claim, a theory, Stantons contend, that divorces this case from the policy and the limitations found therein. In addition, Stantons argue that no proof of loss was submitted on the supplemental claim because State Farm did not request it, and, alternatively, that State Farm waived any such requirement. Before delving into the parties' arguments, however, the court will first detail the Program generally and the SFIP at issue in this case.

---

**2.** It must be noted that this court has steadfastly maintained that there is no such thing as a "motion for reconsideration" under the Federal Rules of Civil Procedure. The United States Court of Appeals for the Eighth Circuit agrees. *See Broadway v. Norris,* 193 F.3d 987, 989 (8th Cir.1999), *In re Trout,* 984 F.2d 977, 978 (8th Cir.1993), and *Sanders v. Clemco Industries,* 862 F.2d 161, 170 (8th Cir. 1988). While State Farm contends that a

motion for reconsideration can be captioned as a motion for Rule 60(b) relief, the Eighth Circuit has made clear that a motion for Rule 60(b) relief is inappropriate to merely reargue the decided issue. *See Broadway,* 193 F.3d at 989. In addition, Rule 60(b) has no application to an order denying a motion to dismiss. Such order was not a final order and was not appealable.

## A. NATIONAL FLOOD INSURANCE PROGRAM

[¶ 9.] Congress enacted the National Flood Insurance Act of 1968 ("the Act"), 42 U.S.C. § 4001 *et. seq.,* in response to a growing concern that the private insurance industry was unable to offer reasonably priced flood insurance on a national basis. *See* 42 U.S.C. § 4001(a), (b); *Flick v. Liberty Mutual Fire Ins. Co.,* 205 F.3d 386, 387 (9th Cir.2000). The Act established the Program to provide federally subsidized flood insurance at or below actuarial rates. *See Cohen v. State Farm Fire and Casualty Co.,* 68 F.Supp.2d 1151, 1154 (C.D.Cal.1999). "The congressional purpose behind establishing national flood insurance was to alleviate the personal hardship and economic distress created by flooding by making flood insurance coverage available upon reasonable terms and conditions." *Id.* (citations omitted). Since 1979, the Program has been administered by the Director of FEMA and is a program with "large-scale" federal involvement. *See id., Flick,* 205 F.3d at 388.

[¶ 10.] By regulation, FEMA has delegated authority to issue flood policies under the Program to "Write Your Own" ("WYO") private insurance companies. *See* 44 C.F.R. § 61.13(f). In issuing the WYO policies, all insurance companies must adhere to the exact language prescribed by the federal regulations, which cannot be altered absent express authorization of FEMA. *See* 44 C.F.R. Pt. 61, App. § 61.5(i), 61.13(a), (d). The resulting policy contract is the SFIP. *See Cohen,* 68 F.Supp.2d at 1154. WYO policies are issued in the name of a particular company. That company collects the premiums and "arranges for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance [it issues] under the Program." 44 C.F.R. § 62.23(d).

[¶ 11.] In its role as a WYO, a private insurance company functions as a fiscal agent of the United States. *See* 42 U.S.C. § 4071(a)(1); *Mancini v. Redland Ins. Co.,* 248 F.3d 729, 733 (8th Cir.2001); *but see* 44 C.F.R. § 62.23(g) (stating that WYO insurers are not general agents of the federal government). Any SFIP purchased from a WYO company, therefore, is more than a typical insurance contract; FEMA regulations govern the conditions under which federal flood insurance funds may be disbursed to eligible policy holders. *See* 44 C.F.R. § 61.13; *Mancini,* 248 F.3d at 733. One of the conditions that a claimant under an SFIP must comply with before receiving any federal flood insurance funds is the submission of a sworn proof of loss within 60 days of any flood loss. *See* 44 C.F.R. Pt. 61, App. A(1), Art. 9(J)(3); *Flick,* 205 F.3d at 389. A properly submitted proof of loss is a condition precedent to any recovery under an SFIP, a recovery which comes from the federal treasury, and it is, therefore, to be strictly construed. *See Mancini,* 248 F.3d at 733–34.

## B. THE SFIP AT ISSUE IN THIS CASE

[¶ 12.] The SFIP that the Stantons purchased from State Farm, contained the following pertinent provisions regarding a proof of loss:

O. Requirements in Case of Loss: Should a flood loss occur to the insured property, the insured must: . . .

3. Within 60 days after the loss, send the Insurer a proof of loss, which is the Insured's statement as to the amount it is claiming under the policy signed and sworn to by the Insured and furnishing the following information: . . .

d. The actual cash value of each damaged item of insured property and

the amount of damages sustained;

. . .

i. The amount the Insured claims is due under this policy to cover the loss, including statements concerning:

(1) The limits of coverage stated in the policy; and

(2) The cost to repair or replace the damaged property . . . [ .]

6. The insurance adjuster whom the Insurer hires to investigate the claim may furnish the Insured with a proof of loss form, and she or he may help the Insured to complete it. However, this is a matter of courtesy only, and the Insured must still send the Insurer a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help the Insured complete it. In completing the proof of loss, the insured must use its own judgment concerning the amount of loss and the justification for the amount.

The adjuster is not authorized to approve or disapprove claims or to tell the Insured whether the claim will be approved by the Insurer.

[¶ 13.] The SFIP at issue in this case also contains the following provisions regarding the waiver of the proof of loss requirement:

7. The Insurer may, at its option, waive the requirement for the completion and filing of a proof of loss in certain cases, in which event the Insured will be required to sign and, at the Insurer's option, swear to an adjuster's report of the loss which includes information about the loss and the damages needed by the Insurer in order to adjust the claim.

D. Amendments and Waivers, Assignment: This Standard Flood Insurance Policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action the Insurer takes under the terms of this policy can constitute a waiver of any of its rights.

All of the above-quoted provisions in Stantons' SFIP are required to be in all flood insurance policies operating within the Program pursuant to 44. C.F.R. Pt. 61, App. A(1).

## C. DISCUSSION

[¶ 14.] Based on the above provisions, State Farm argues that Stantons' bad faith claim is barred by their failure to timely submit a sworn proof of loss regarding their supplemental claim. In response, Stantons advance two arguments: first, they argue that since State Farm never requested a supplemental proof of loss statement, they did not have to produce one, and, secondly, that State Farm waived the requirement of a supplemental proof of loss in this case.

[¶ 15.] In the background of these arguments is a broader disagreement between the parties that they each feel compels a decision in their respective favor. State Farm argues that Stantons' bad faith extra-contractual claim derives from the policy itself, and is, therefore, subject to the proof of loss requirement. Stantons counter by arguing that their lawsuit sounds in tort. They contend this divorces their cause of action from the policy and all of its conditions precedent. The court, in ruling on the present motion for summary judgment, is not required to resolve this dispute about the origin of Stantons' bad faith cause of action because, even assuming Stantons' position is correct, State Farm is nonetheless entitled to judgment as a matter of law.

[¶ 16.] In order to recover in tort, one must, of course, first establish a prima

facie case. Whether the tort action is based on negligence or on intentional conduct, an element of both is that of duty. Without establishing the existence of duty and the breach of it, recovery cannot be had. Thus, taking Stantons at their word, in order for them to recover in tort against State Farm in this bad faith action, they must first establish duty and breach. *See Stene v. State Farm Mut. Auto. Ins. Co.,* 1998 SD 95, ¶ 19, 583 N.W.2d 399, 403. To recover in such cases, "there must be a failure to comply with a duty under the insurance contract." *Gilchrist v. Trial King Industries, Inc.,* 2000 SD 67, ¶ 16, 612 N.W.2d 399, 403. Thus, a bad faith claim denominated as a "tort" must still comply with the fundamental notions of duty and breach before liability for the tort may be imposed. *Id.*

[¶ 17.] It is well established under federal law that an insured must strictly comply with the terms and conditions of an insurance policy issued pursuant to a congressionally mandated program. *See Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). As the Supreme Court has cautioned, "not even the temptations of a hard case" warrant a reading of the terms and conditions of such a policy with "charitable laxity." *Id.* at 386, 68 S.Ct. 1. A court is to guard against "charitable laxity" because any funds disbursed from such a program come from the federal treasury. *See Mancini,* 248 F.3d at 733. As Justice Holmes stated long ago, "[m]en must turn square corners when they deal with the Government." *Rock Island, Ark. & La. R.R. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188, (1920). That admonition is just as true today when one deals with the fiscal agents of the government as well. *See* 42 U.S.C. § 4071(a)(1); *Mancini,* 248 F.3d at 733.

[¶ 18.] "The 60 day sworn proof of loss requirement is a condition precedent to payment for which all claimants are strictly accountable." *Flick,* 205 F.3d. at 395, *accord Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir.1998). As the Fifth Circuit held in *Gowland,* "an insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." *Id.* The Eighth Circuit agrees, stating "[t]he policy, strictly construed, permits the company to deny coverage where an insured has failed to submit a signed and sworn statement of the amount claimed, and it divests a non-complying insured of the right to sue." *Mancini,* 248 F.3d at 735.

[¶ 19.] As stated above, Stantons believe their bad faith claim which they claim sounds in tort survives the overwhelming weight of authority that holds as fatal an SFIP claimant's failure to timely submit a sworn proof of loss. However, in making that claim, Stantons ignore the fundamental tort concepts of duty and breach. State Farm had no duty to act on any claim submitted by Stantons until they timely submitted a sworn proof of loss. Such a result is clear from the policy language itself as well as the case law cited above. An insurer's duty to act under the policy is only triggered when the claimant faithfully adheres to the requirements of the policy. One of the requirements that must be strictly followed by a claimant under a SFIP is the submission of a proof of loss. If no such proof of loss is submitted, the insurer may deny coverage, *Gowland,* 143 F.3d at 954, and the non-complying insured is divested of the right to sue, *Mancini,* 248 F.3d at 735. Therefore, before State Farm had an obligation to do anything under the policy, Stantons had to first discharge their obligations, one of which was to submit a proof of loss. Because it is undisputed that they did not do so in regards to their supplemental claim,

it necessarily follows that State Farm had no duty under the SFIP to act. While it is true that State Farm finally did take action on Stantons' supplemental claim and issued a check to satisfy it, from a legal standpoint, State Farm was not required to do so. State Farm's duties under the SFIP would have only sprung into effect once Stantons timely submitted a proper proof of loss form. Thus, it would be inappropriate indeed to permit a claimant to go forward with a bad faith action when the insurance company had no legal duty to act in the first place. Because a supplemental proof of loss was not submitted here, State Farm's motion for summary judgment should be granted.

■ [¶ 20.] Instead of discussing what they failed to do, Stantons desire to focus on the conduct of State Farm as they try to defend State Farm's motion for summary judgment. Particularly, Stantons advance two arguments. Stantons first contend that no supplemental proof of loss was required because State Farm never requested one. That contention, however, simply ignores the clear language of the SFIP which requires the submission of a proof of loss within 60 days following a flood loss that details the actual cash value of each damaged item of insured property and the amount of damages sustained. *See* 44 C.F.R. Pt. 61, App. A(1)(*J*). In fact, the opening language of the entire section detailing the requirements in case of a flood loss state that "[s]hould a flood loss occur to your insured property, *you* must" comply with the terms as set forth therein. *Id.* (emphasis added). The clear import of these provisions is that Stantons had the burden of providing a proof of loss, and if, for whatever reason, some damaged property was not included in the first proof of loss, Stantons had the continuing burden of submitting a supplemental proof of loss that detailed the lost or damaged property and its actual cash value. Those provisions put the burden of completing a proof

of loss squarely on the insured, as does 44 C.F.R. Pt. 61, App. A(1)(J)(6), which states that the insurance adjuster may assist the insured with the completion of a proof of loss form, but that any such service is a "courtesy only" and that the insured "must use [his or her] own judgment concerning the amount of loss and the justification for that amount." State Farm, therefore, had no duty under the SFIP to request a supplemental proof of loss. It follows, then, that State Farm's failure to request a supplemental proof of loss is of no consequence to this litigation.

■ [¶ 21.] Stantons' next argument is that of waiver. Their argument is that State Farm, by adjusting and eventually paying the supplemental claim, waived the proof of loss requirement. In advancing this argument, Stantons point to the SFIP provision which purportedly gave State Farm the right to waive the proof of loss. However, both the SFIP and the regulations governing it make it clear that only the Federal Insurance Administrator can waive the provisions of the SFIP. *See* 44 C.F.R. § 61.13(d), 44 C.F.R. Pt. 61, App. A(*l*)(D). The vast majority of decisions that have considered the issue strongly enforce that provision. *See, e.g., Gowland,* 143 F.3d at 954–55 (rejecting a waiver argument where the insurer sent a reminder letter to the insured regarding the proof of loss after the sixty-day deadline), *Jamal v. Travelers Lloyds of Texas Ins. Co.,* 131 F.Supp.2d 910, 919 (S.D.Tex.2001) (refusing to accept a waiver argument where the insurer paid a portion of the claim without first receiving a proof of loss statement), *Messa v. Omaha Property & Casualty Ins. Co.,* 122 F.Supp.2d 523, 529 (D.N.J.2000) (rejecting the application of the waiver doctrine where the insurer attempted to extend the sixty-day deadline), *Riverdale Mills Corp. v. American Modern Home Ins. Co.,* 122 F.Supp.2d 114,

119–120 (D.Mass.2000) (declining to apply the waiver doctrine where the insurer told the claimant that the claim would be held open for an additional thirty days after the sixty-day deadline); *cf. Mancini,* 248 F.3d at 735 (refusing to apply the doctrine of equitable estoppel where the insurer erroneously indicated that the proof of loss had been accepted). As these decisions indicate, the provision in the SFIP barring the insurer from waiving any other provisions of the SFIP or otherwise impairing the government's rights is enforced with vigilance.

[¶ 22.] No claim is made in this action that State Farm mislead Stantons or ever attempted to waive the proof of loss as required by the policy. Stantons, on their own, simply did not file the supplemental proof of loss. They did not file although they clearly knew they had to file in the first instance and did so. No one mislead them in any way.

[¶ 23.] It must be noted that there are very practical reasons why the insurer under the Program is not permitted in almost all cases to waive the requirements of a proof of loss. The Program operates almost totally unlike the private insurance market. In the business world in general, private insurance companies, after collecting premiums, pay claims with their own funds. They have a financial incentive to not pay claims or to delay the payment of claims, meanwhile earning interest on investments while the claims go unpaid. If poor underwriting has been done and if too many claims are paid, the insurance company is in financial trouble. It does not work that way for flood insurance. There is no incentive for the insurance company to not pay claims since the payments are coming from the federal treasury. In fact, the incentive is the reverse. While WYO insurance companies are paid processing fees and administrative costs, such companies make the real money, to reverse a well-known advertising claim, "the new fashioned way," by paying claims. They receive a commission of 3.3% of the amount of the claim paid when a claim is paid. *See* 44 C.F.R. Pt. 62, App. A, Art. III(C)(1); *see also Scherz v. South Carolina Ins. Co.,* 112 F.Supp.2d 1000, 1004 (C.D.Cal.2000) (discussing the 3.3% commission). There would be absolutely no reason why State Farm would want to delay payment of Stantons' claims. The higher the amount of claims paid, the more State Farm is paid.

[¶ 24.] While it appears that the provision relied upon by Stantons would in some cases permit State Farm to waive the requirement of a proof of loss, that same provision, however, to have any effect, has its own requirements. The provision states that "[the insurer] may, at [its] option, waive the requirement for the completion and filing of a proof of loss in certain cases, in which event you will be required to sign and, at [the insurer's] option, swear to an adjusters [sic] report of the loss and the damages sustained, which is needed by [the insurer] in order to adjust your claim." 44 C.F.R. Pt. 61, App. A(1)(J)(9); *see also Jamal,* 131 F.Supp.2d at 918 (construing this provision narrowly and stating that "the SFIP clearly states that the actions of the insurer under the policy do not operate as a waiver of any of its rights"). It is undisputed in this case that Stantons never signed or swore to any adjuster's report. Thus, Stantons are not in compliance with the very waiver provision they believe applies to their benefit in this case, and, accordingly, are outside any protection the provision might have offered. *See Jamal,* 131 F.Supp.2d at 918.

[¶ 25.] The only authority relied upon by Stantons in support of their position is *Bleecker v. Standard Fire Ins. Co.,* 130 F.Supp.2d 726 (E.D.N.C.2000). In *Bleecker,* the plaintiff sued the SFIP private

insurer for benefits under the policy and on extra-contractual state law causes of action. *Id.* at 739–740. In response, the insurer made two specific and limited motions. One was a motion for summary judgment on the claim seeking benefits under the policy, the motion being based on the claimant's failure to timely submit a proof of loss. *Id.* The other was a motion to dismiss the extra-contractual claims on grounds of preemption. *Id.* Stantons, in relying on *Bleecker*, overlook the importance of the two motions that the *Bleecker* court addressed. For whatever reason, the insurer in that case constrained the discussion of the proof of loss issue to the claim for benefits under the policy and only discussed the extra-contractual claims in the preemption context. *Id.* at 731–732. The *Bleecker* court strictly enforced the proof of loss requirement and granted the insurer's motion for summary judgment on the claim seeking benefits under the policy. *Id.* at 731–32. After disposing of that motion, the *Bleecker* court then shifted its focus to the issue of preemption regarding the extra-contractual claims. That court concluded, as has this court, that the Act does not preempt state tort law claims. *See Stanton v. State Farm Fire and Casualty Co.,* 1999 DSD 37, 78 F.Supp.2d 1029 (D.S.D.1999) (concluding that the Act did not preempt, under the theory of field preemption, Stantons' state law bad faith action). At no time, however, did the *Bleecker* court conclude that state law tort claims exempt insureds from the proof of loss requirement. To the contrary, *Bleecker* expressly adopted the doctrine of strict construction in regard to provisions in governmentally-backed insurance policies. *See* 130 F.3d at 732. The *Bleecker* court did not have occasion, however, to consider the effect the proof of loss provision would have on the extra-contractual claims presented. The fact that the *Bleecker* court allowed the extra-contractual claims to go forward says nothing about whether the proof of loss provision applies. In the same manner, this court itself has once considered this case by way of a motion to dismiss and allowed the case to proceed. Thus, nothing in *Bleecker* compels a result in favor of Stantons and their reliance on it is misplaced.

## D. CONCLUSION

[¶ 26.] Based on the foregoing, the court concludes that no genuine issue of material fact exists and that State Farm is entitled to judgment as a matter of law. Stantons' failure to timely submit a proof of loss absolved State Farm of any duty to act in this case. Having no duty, State Farm cannot be held liable for bad faith. To conclude otherwise would punish State Farm for eventually paying a claim it was not legally obligated to pay.

### *ORDER*

[¶ 27.] Now, therefore,

[¶ 28.] IT IS ORDERED

(1) State Farm's motion for summary judgment, Doc. 41, is granted and plaintiffs' complaint is dismissed with prejudice and without costs.

(2) State Farm's motion for reconsideration, Doc. 44, is denied as moot.

(3) State Farm's motion to strike the expert report of Clint Miller, Doc. 64, is denied as moot.

(4) State Farm's motion for leave to file newly issued authorities, Doc. 76, is denied as moot.

(5) State Farm's motion for leave to file a motion for Rule 60(b) relief, Doc. 77, is denied as moot.

(6) State Farm's motion for leave to file additional authority, Doc. 86, is denied as moot.