United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-31213

---

C.W. GALLUP, also known as Bo Gallup, SUSAN MOCK GALLUP,

Plaintiffs-Appellees,

versus

OMAHA PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant-Appellant.

--------------------

Appeal from the United States District Court
for the Eastern District of Louisiana

--------------------

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Omaha Property and Casualty Company, a Write Your Own insurer under the National Flood Insurance Program, appeals the district court's interlocutory order that the plaintiffs' state law tort claims against the insurer are not preempted by federal law pursuant to regulations promulgated by FEMA under authority of the National Flood Insurance Act of 1968. Based on this court's holding in Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005), we reverse.

I.

A.

The National Flood Insurance Program (the "NFIP") was established by the National Flood Insurance Act of 1968 (the "Act"), 42 U.S.C. § 4001, et seq. The Federal Emergency Management Agency ("FEMA"), an agency of the Department of Homeland Security, administers the NFIP. The NFIP has two components: (1) a flood insurance program, and (2) a unified national plan for flood management. 42 U.S.C. §§ 4001(b) and (c). Initially, the program operated primarily through a pool of private insurers under the supervision and with the financial support of the Department of Housing and Urban Development. In 1977, the Secretary of HUD made FEMA primarily responsible for its operation. 42 U.S.C. § 4071. FEMA by regulation promulgated the Standard Flood Insurance Policy ("SFIP") and provided for marketing and claims adjustment by private insurers operating as "Write Your Own" ("WYO") companies. These companies issue SFIPs in their own names, and arrange for the adjustment, settlement, payment and defense of all claims arising from the policies. FEMA regulations establish the terms of the SFIP, rate structures and premium costs. Claims are ultimately paid out of the U.S. Treasury. This new arrangement is referred to as Part "B" of the NFIP.

Section 4072 of the Act, allows suits against FEMA for

claims on flood policies:

> § 4072.  Adjustment and payment of claims; judicial review; limitations; jurisdiction
>
> In the event the program is carried out as provided in section 1340 [42 USCS § 4071], the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.  Effective December 31, 2000, FEMA proposed an amendment to the SFIP, which added the following language to Article IX of the standard flood insurance policy:

> IX.  What Law Governs
> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.), and Federal common law.

44 C.F.R. pt. 61, App. A(1), Art. IX (2001).

B.

The Gallups purchased a SFIP from defendant Omaha Property & Casualty Insurance Company ("Omaha") for their home and its contents in Covington, Louisiana in 2002 and 2003.  Omaha provides flood insurance through the NFIP under FEMA, acting as a "Write Your Own" insurer.

3

On December 24, 2002, a flood occurred on the plaintiffs' property ("Flood I"). An architect and engineer consulted by the plaintiffs determined that the flood caused damage to the structure of the home. The plaintiffs filed a Proof of Loss with Omaha, claiming damages of $210,000.00 - the replacement value of their home ("Claim I"). Omaha's engineer inspected the home and recommended repairs to restore the structural integrity of the home but also stated that the home had not suffered any damage from the flood, other than soil loss from underneath the pilings. Omaha modified the claim, paying only the amount it would cost to replace the soil beneath the home, approximately $9,000.

In June 2003, another flood occurred related to Tropical Storm Bill ("Flood II"). Flood II severely damaged the Gallup home, causing part of the home to sag and completely undermining several footings supporting the piers that elevate the home. The plaintiffs filed another Proof of Loss with Omaha seeking approximately $209,000, the total replacement value of the home less the deductible ("Claim II"). Omaha denied the claim after its attempts to settle for a nominal sum were unsuccessful.

In December 2003, the plaintiffs filed suit against Omaha alleging (1) breach of contract on Claims I and II under federal common law, (2) breach of the duty of good faith and fair dealing under federal common law on Claims I and II, (3) bad faith breach of contract on Claims I and II under La. Civil Code Art. 1997, and (4) bad faith adjustment of Claim II under La. Rev. Stat.

4

22:1220.

In a Motion to Dismiss, Omaha argued that the plaintiffs'
state law claims are preempted based on the December 2000
regulation which added an express preemption provision to the
SFIP. The district court analyzed the motion as presenting the
issue whether FEMA was authorized to issue the regulation in its
grant of authority from Congress.  The district court concluded
that FEMA was not authorized by Congress to preempt the
application of state laws to extra-contractual claims.  It also
found that preemption is inconsistent with the purposes of the
Act.  Accordingly, it denied the defendant's Motion to Dismiss
the plaintiffs' state law claim under La. Civ. Code Art. 1997.
It granted the Motion to Dismiss the plaintiffs' state law claims
under La. R.S. 22: 1220 because those claims relate to the
coverage of the policy, which is governed by federal law under 42
U.S.C. § 4072.  It also granted the Motion to Dismiss the
plaintiffs' federal common law claims for breach of good faith
and fair dealing as inapplicable because these claims could be
asserted under Civil Code article 1997.  The district court
certified its ruling for immediate appeal and Omaha appealed.[1]

## II.

The parties have presented the issue in this case as whether

---

[1] We previously granted Omaha's Petition for Leave to Appeal
from an Interlocutory Order in December 2004.

the National Flood Insurance Program authorizes FEMA to promulgate a regulation to preempt state law claims made against Write Your Own Insurance providers under the National Flood Insurance Program.  This is understandable because, until this court's recent decision in <u>Wright v. Allstate Ins. Co.</u>, 415 F.3d 384 (5th Cir. 2005), courts (including this one) have interpreted our precedent as holding that the NFIP does not preempt state law tort claims.  See <u>Spence v. Omaha Indemnity Ins. Co.</u>, 996 F.2d 793 (5th Cir. 1993); <u>Richmond Printing LLC v. Director, FEMA</u>, 72 Fed. Appx. 92 (5th Cir. 2003)(unpublished)(interpreting <u>Spence</u> as holding that a misrepresentation extracontractual claim was not preempted by the Act).

In <u>Wright v. Allstate Ins. Co.</u>, we concluded that <u>Spence</u> did not support that conclusion.

> A careful reading of *Spence*, however, reveals that *Spence* does not hold that state law tort claims are not preempted by the NFIA. The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO. While we held that state law would govern the statute of limitations for state law tort claims, we did not foreclose the possibility of field or conflict preemption. Rather, our holding was premised on the fact that "the NFIA contains no express preemption provision" and "neither [the insurer] nor the federal government as amicus suggests preemption of the state law fraud claim." *996 F.2d at 797 n.20*. Thus, the issue of whether the NFIA preempted  state law tort claims was not before the court in *Spence*, and the court did not address it.

415 F.3d at 389-390.  We held in <u>Wright</u> that "state law tort claims arising from claims handling by a WYO are preempted by

federal law." Id. at 390.  The case does not rely on the 2000 regulation at issue in this case, but notes that "[w]hile no circuit has yet addressed whether this amendment is effective as an express preemption of state law claims, it can obviously be so argued."  Id.   Wright also observed that two other circuits have held that federal law preempts state law tort claims based on a WYO's handling of an insurance claim, citing  C.E.R. 1988, Inc. v. The Aetna Casualty & Surety Co., 386 F.3d 263 (3d Cir. 2004); Gibson v. American Bankers Ins. Co., 289 F.3d 943 (6th Cir. 2002).  Id.

Given this court's holding in Wright, that state law tort claims arising from claims handling by a WYO are preempted by the National Flood Insurance Act, it necessarily follows that the Act gives FEMA authority to promulgate regulations to that effect.

### III.

Based on our decision in Wright, the district court erred in concluding that state law claims against a WYO carrier are not preempted by the National Flood Insurance Act and related regulations.  Accordingly, the district court's judgment to that effect, denying Omaha's Motion to Dismiss the Gallups' claims under La. Civ. Code art. 1997, is reversed and this case is remanded to the district court for further proceedings.[2]

_____

    [2]  Although briefed by the parties, we have no jurisdiction in this interlocutory appeal to reach the district court's order granting Omaha's Motion to Dismiss the Gallup's federal common law claims. Omaha cannot appeal a ruling in its favor and the

REVERSED and REMANDED.

---

Gallups did not seek certification to appeal that ruling.